IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTMORELAND OPPORTUNITY FUND, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| RICHARD A. ZAPPALA, FRANK J. ZAPPALA, and RONALD A. ROSENFELD, | ) ) ) ) |
| Defendants. | ) |

Civil Action No. 13-456

Judge Nora Barry Fischer

## **MEMORANDUM OPINION**

I. **INTRODUCTION**

Presently before the Court is the Motion to Dismiss (Docket No. 20) filed by Richard A. Zappala, Frank J. Zappala, and Ronald A. Rosenfeld (*collectively*, "Defendants" or "Principals"), pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to all claims pled in Plaintiff Westmoreland Opportunity Fund, L.L.C.'s First Amended Complaint of August 5, 2013. (Docket No. 19). Plaintiff pleads claims under the law of the Commonwealth of Pennsylvania for breach of contract, and seeks greater than $75,000.00 in damages. (*Id.*). This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (diversity). For the following reasons, Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is a Pennsylvania corporation located in Monroeville, Pennsylvania. (Docket No. 19 at 1). Defendants Richard and Frank Zappala are residents of Florida, and Defendant Ronald Rosenfeld is a resident of Virginia. (Docket No. 19 at 2). Together, Defendants are the principals of a Pennsylvania limited partnership doing business as FRA Associates, L.P. ("Borrower"), with a registered address in Pittsburgh, Pennsylvania. (Docket No. 19 at 3). Borrower is the owner of real property located in Penn Hills, Pennsylvania. (Docket No. 19 at 3).

In May 2005, Borrower engaged in the purchase of said real property in Penn Hills, Pennsylvania by executing an "Open-End Mortgage Note" (Docket No. 19-1), "Open-End Mortgage and Security Agreement" (Docket No. 19-2), "Principals' Indemnification Agreement" (Docket No. 19-3), and "Environmental and Accessibility Indemnity Agreement" (Docket No. 19-4) (*collectively*, "Loan Documents") with Nationwide Life Insurance Company ("Lender") for consideration in the amount of $4,200,000.00. (Docket No. 19 at 4). Through a series of assignments, Plaintiff ultimately became the holder of the Loan Documents, and the rights and obligations contained therein, on December 11, 2012. (Docket No. 19 at 4 – 7). The assignment was recorded on December 18, 2012. (Docket No. 19 at 7).

Under the terms of the Loan Documents, Borrower was required to pay 119 consecutive monthly installments of $24,536.75, beginning on July 1, 2005 and ending on June 1, 2015. (Docket Nos. 19 at 7; 19-1 at 1). Borrower failed to make payments beyond July 2011, and was in monetary default as a result. (*Id.*). Complaints were filed against Borrower in Pennsylvania courts in January and February 2013, seeking Confession of Judgment and Foreclosure. (*Id.*).

A Complaint was thereafter filed against Defendants in this court on March 27, 2013. (Docket No. 1). Defendants moved to dismiss Plaintiff's complaint on June 18, 2013 (Docket No. 9), and the Court granted Plaintiff leave to file an Amended Complaint. (Docket No. 18). Plaintiff's First Amended Complaint was filed on August 5, 2013. (Docket No. 19). Defendants filed a Motion to Dismiss and brief in support on August 23, 2013. (Docket Nos. 20, 21). A brief in opposition was filed by Plaintiff on September 13, 2013 (Docket No. 22), and was followed by Defendants' reply brief on September 25, 2013 (Docket No. 23). The matter is now fully briefed and ripe for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F. 3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed

3

factual allegations," *Phillips*, 515 F. 3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F. 3d at 213 (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of . . . facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F. 3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F. 3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F. 3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

V. DISCUSSION

In the present case, Plaintiff argues in Counts I through III of its First Amended Complaint that Defendants are personally liable for Borrower's breach of the covenants contained within the Loan Documents as a result of their execution of the "Principals' Indemnification Agreement" (Docket No. 19-3), and "Environmental and Accessibility Indemnity Agreement" (Docket No. 19-4), the former constituting not only an indemnity

agreement, but also a guaranty. (Docket No. 19 at 11 – 15). Defendants seek the dismissal of the above claims, arguing that the language contained within all of the Loan Documents is incompatible with the finding of a guaranty, that the debt was non-recourse, and that Defendants' environmental indemnification liability has not been triggered by the facts pled by Plaintiff. (Docket No. 21 at 4 – 12).

A. Count I: Defendants' Liability for the Mortgage Note

Defendants do not dispute the validity of Plaintiff's allegations concerning Borrower's breach of its contractual duties to make payments toward the loan. Indeed, Defendants admit that Borrower defaulted and did not contest the foreclosure proceedings against the property. (Docket No. 21 at 11 – 12). However, according to Plaintiff, not only was Borrower in monetary default, but Borrower had also committed incurable default as a result of breach of Section 22 of the Mortgage – specifically, Section 22(b)(vii) and (xix). (Docket Nos. 19 at 8 – 9, 12; 19-2 at 23 – 24). Plaintiff argues that, as a result of this incurable default, Defendants became liable for payment of the full value of the Note, in accordance with the "Principals' Indemnification Agreement," to which Defendants affixed their signatures. (Docket Nos. 19 at 9 – 13; 19-3). The agreement provides, in relevant part, that:

> WHEREAS, Lender is unwilling to make the Loan to Borrower unless Indemnitors agree to *guaranty and indemnify* and hold lender harmless from and against certain matters more particularly set forth herein; and
>
> WHEREAS, Indemnitors desire to give such *guaranty and indemnification* to Lender in order to induce Lender to make the Loan to Borrower...
>
> ...the Indemnitors hereby covenant and agree as follows:
>
> 1. *Guarantees and Indemnities*: Notwithstanding *any provision in the Note, the Mortgage or any other instrument* evidencing or securing the Loan (the Note, the Mortgage and such other instruments being collectively referred to as the "Loan Documents") limiting or negating *Borrower's personal liability*, the Indemnitors hereby jointly and severally, unconditionally and absolutely (a)

5

> indemnify and ... (b) *guaranty to Lender* payment and performance of ... (hereinafter collectively referred to as the "*Guaranteed Obligations*"):
>
> ...
>
>     (m)    the failure to comply or breach or default under the single purpose entity provisions as set forth in Section 22(b) of the Mortgage.
>
> ...
>
> Notwithstanding *anything to the contrary contained herein, in the Note or in the other Loan Documents*, the Indemnitors shall be personally, fully and completely liable for the payment of the Note (*including all principal, interest and other charges*) and performance under the Loan Documents in the event ... (c) Borrower or its general partner violate the provisions of Section 22 of the Mortgage.
>
> ...
>
>     2.    <u>Nature of Guaranty</u>. This Agreement is an irrevocable, absolute, continuing *guaranty of payment and performance*, is joint and several and is not a guaranty of collection.
>
> ...
>
> This Agreement may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.
>
> ...
>
>     9.    <u>Term</u>. Indemnitors agree that this Agreement shall survive the repayment and satisfaction of the Loan and shall continue in full force and effect for so long as the exceptions to Borrower's "non-recourse" liability listed in the Exculpation section of the Note shall remain in effect with respect to the Borrower.
>
> ...
>
>     22.    <u>Personal Liability</u>. Indemnitors hereby acknowledge and agree that *notwithstanding any other provision of this Agreement, the Note, the Mortgage or any of the other Loan Documents to the contrary*, the obligations of the Indemnitors under this Agreement shall, except as otherwise expressly set forth in this Agreement, be unlimited and unconditional personal obligations, and that Lender would not enter into the Loan but for the personal liability undertaken by Indemnitors under this Agreement.

(Docket No. 19-3 at 1 – 2, 4 – 5, 7, 11) (emphasis added). Based upon such contractual language and the well-pled averments in Plaintiff's First Amended Complaint, the Court finds these provisions sufficient to constitute the plausible creation of at least a partial guaranty relationship under the laws of Pennsylvania as between Defendants and Plaintiff. *CitiCorp North America, Inc. v. Thornton*, 707 A. 2d 536, 539 (Pa. Super. Ct. 1998) (citing *Homewood People's Bank v. Hastings*, 106 A. 308, 309 (Pa. 1919)). To this end, Defendants assumed an independent

6

contractual obligation to Lender pursuant to the "Principals' Indemnification Agreement," and thereby surrendered certain protection afforded by the non-recourse nature of Borrower's liability on the Note and Mortgage, as well as protection afforded Defendants as a function of Borrower's corporate identity. *Id*.

A guaranty is an agreement to pay a debt or undertake a duty for which another is primarily responsible. *Marcucci v. H & L Developers, Inc.* 2009 WL 5177767 at *7 – 8 (E.D. Pa. Dec. 31, 2009) (citing *Thornton*, 707 A. 2d at 539; *Hastings*, 106 A. at 309). "The purpose of a guarantee agreement is to define the legal rights and liabilities of third parties." *Fusaro v. Commonwealth, Unemployment Comp. Bd. of Review*, 483 A. 2d 1013, 1015 (Pa. Commw. Ct. 1984). In contrast, an "agreement to indemnify is an obligation resting upon one person to make good a loss which another has incurred or may incur by acting at the request of the former, or for the former's benefit." *Potts v. Dow Chemical Co.*, 415 A. 2d 1220, 1221 (Pa. Super. Ct. 1979). In essence, the distinction between a guaranty agreement and an indemnity agreement is "that between an affirmative covenant for a speci[fic] thing, and one of indemnity against damage by reason of the nonperformance of the thing specified." *Purdy v. Massey*, 159 A. 545, 546 (Pa. 1932) (citations omitted).

Nonetheless, contracts of guaranty and indemnity are not mutually exclusive; hybrid contracts with elements providing remedies available under both guaranty and indemnity agreements are accepted in Pennsylvania. *Hatfield Twp. v. Lexon Ins. Co.*, 15 A. 3d 547, 559 (Pa. Commw. Ct. 2011). While inclusion of the terms "guaranty" and "indemnity" in the same agreement is not dispositive as to the ultimate nature of the agreement, and obligations and liabilities set forth therein (s*ee Thornton*, 707 A. 2d at 539; *see also Commonwealth ex rel. Schnader v. Great American Indemnity Co.*, 167 A. 793, 795 (Pa. 1933) (party found to be a

surety under an agreement referred to as an "indemnity bond")), the contractual rights and duties created by such an agreement "'cannot be extended beyond the plain import of the words used.'" *Hatfield*, 15 A. 3d at 559 (quoting *Commonwealth, to Use of Pennsylvania Mfrs. Ass'n Cas. Ins. Co. v. Fidelity & Deposit Co. of Maryland*, 50 A. 2d 211, 212 (Pa. 1947)). To that end, the law of Pennsylvania provides a framework for interpreting disputed contractual language.

The Supreme Court of Pennsylvania has held that "'[w]hen the words are clear and unambiguous,' the intent of the parties must be determined from 'the express language of the agreement.'" *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F. 3d 575, 587 (3d Cir. 2009) (quoting *Steuart v. McChesney*, 444 A. 2d 659, 661 (Pa. 1982)). "Clear contractual terms that are capable of one reasonable interpretation must be given effect." *Id.* (quoting *Krizovensky v. Krizovensky*, 624 A. 2d 638, 642 (Pa. Super. Ct. 1993)).

Defendants' initial argument in opposition to Plaintiff's claim under Count I of the First Amended Complaint is that, as to alleged liability under Section 22 of the Mortgage, Defendants were only indemnitors, not guarantors. (Docket Nos. 21 at 4 – 6; 23 at 1 – 4). The Court finds this reading of the "Principals' Indemnification Agreement" to be untenable. Relying upon *Montgomery County v. Ambler-Davis Co.*, 153 A. 621 (Pa. 1931), Defendants argue that Plaintiff's interpretation of the "Principals' Indemnification Agreement" is "an attempt to re-characterize the nature of a legal obligation," and amounts to "ingenious ... labeling of the obligation" contained within. (Docket No. 21 at 4). A plain reading of the agreement's wording reveals no such re-characterization. As to Section 22 liability, the agreement specifically states that:

> Notwithstanding *anything to the contrary contained herein, in the Note or in the other Loan Documents*, the Indemnitors shall be personally, fully and completely liable for the payment of the Note (*including all principal, interest and other*

8

> *charges*) and performance under the Loan Documents in the event ... (c) Borrower or its general partner violate the provisions of Section 22 of the Mortgage.
> ...
> 2. *Nature of Guaranty*. This Agreement is an irrevocable, absolute, continuing *guaranty of payment and performance*, is joint and several and is not a guaranty of collection.

(Docket No. 19-3 at 4 – 5) (emphasis added). Given this contractual language, *Ambler-Davis* is factually distinguishable from the present case; there, Montgomery County issued a bond in payment to Ambler-Davis Co. for construction of a road. 153 A. at 621. A condition of the bond was that Ambler-Davis Co. would not have satisfied its contractual duties until its subcontractors had been fully paid. *Id.* The Supreme Court of Pennsylvania held that this constituted an indemnity agreement. *Id.* at 622 – 23. Presently, the plain language of the "Principals' Indemnification Agreement" provides that upon violation of Section 22 of the Mortgage by Borrower, Defendants – having signed an independent agreement with the Lender – automatically become fully liable for payment of the Note. *See Hastings*, 106 A. at 310 (the guarantee to pay a note is a guaranty). In this Court's opinion, this language is sufficient to constitute at least a guaranty, with the only condition being that a third party (Borrower) violate a condition of a separate agreement (i.e. the Mortgage) in order to create potential liability.

Defendants also argue that the existence of the terms "indemnify" and "hold harmless" in the agreement automatically create an indemnity agreement, citing to the holding in *Jalapenos, L.L.C. v. GRC General Contractor, Inc.*, 939 A. 2d 925, 932 (Pa. Super. Ct. 2007). (Docket No. 21 at 5 – 6). The present case is, once again, factually distinguishable. The pertinent contractual language in *Jalapenos, L.L.C.*, stated that "Contractor shall indemnify and hold harmless the Owner ... from and against claims, damages, losses and expenses ... to the extent caused by ... negligent acts or omissions." *Id.* at 931 – 32. The Superior Court of Pennsylvania held that "under circumstances such as those presented," this language created only an agreement for

9

indemnity. *Id.* at 932. Here, however, the language is not only different, but more comprehensive.

> WHEREAS, Lender is unwilling to make the Loan to Borrower unless Indemnitors agree to *guaranty and indemnify* and hold lender harmless from and against certain matters more particularly set forth herein...

(Docket No. 19-3 at 1) (emphasis added). The "Principals' Indemnification Agreement" thereafter provides the conditions under which the guaranty is triggered, as discussed above. (*See* Docket No. 19-3 at 1 – 2, 4 – 5, 7, 11). This contract between the Lender – now Plaintiff, by assignment – and Defendants, clearly encompasses two separate obligations[1], and Plaintiff has pled facts sufficient to state a plausible claim that Defendants are guarantors of the Note with respect to breach of Section 22 of the Mortgage by Borrower.

Defendants' second argument in opposition to Plaintiff's claims under Count I is that the alleged violation of Section 22(b)(xix)[2] was not adequately pled. (Docket Nos. 21 at 6 – 9; 23 at 1 – 4). Defendants' assertion is without merit. In this regard, Section 22(b)(xix) of the mortgage provides that:

> (b) Borrower covenants and agrees that it has not and shall not:
> ...
> (xix) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations (except for principal and interest due under the Note which shall be paid from the cash flow generated by the Property)...

(Docket No. 19-2 at 21, 23).

In its First Amended Complaint, Plaintiff avers that "exclusive of current interest, principal, or other obligations due under the Note," Borrower is not adequately capitalized

---

[1] Even the court in *Ambler-Davis* recognized that an agreement to indemnify *and* guaranty could be contained within the same contract. 153 A. at 622. The Court finds that the plain wording of the "Principals' Indemnification Agreement" provides for such a contract, here.

[2] Plaintiff also grounded its claim in Count I upon violation of Section 22(b)(vii), which Defendants do not address. (Docket No. 19 at 12).

because current assets are less than current liabilities. (Docket No. 19 at 12). Additionally, Plaintiff pleads that Borrower had no maintenance reserve, and trade and operational payables were in excess of $349,859.00 for 2013. (*Id.*). When viewing the pleadings in the light most favorable to Plaintiff as the non-moving party, these factual averments are sufficient to state a plausible claim that Borrower is insolvent and unable to satisfy its outstanding debt, exclusive of its concurrent inability to satisfy the terms of the Note and Mortgage. As Plaintiff has adequately alleged that Defendants guaranteed such obligations of the Borrower, Defendants' Motion to Dismiss as it pertains to Count I of the First Amended Complaint is denied.

B. Count II: Defendants' Liability for Asbestos Removal

In Count II of its First Amended Complaint, Plaintiff claims that Defendants are liable as indemnitors and guarantors with respect to the existence, and future removal of, asbestos from the mortgaged property. (Docket No. 19 at 13 – 15). Two Loan Documents speak to the nature of Defendants' liability for environmental hazards on the mortgaged property: the "Principals' Indemnification Agreement," and the "Environmental and Accessibility Indemnity Agreement." The "Principals' Indemnification Agreement" provides, in relevant part that:

> 1. *Guarantees and Indemnities*: Notwithstanding *any provision in the Note, the Mortgage or any other instrument* evidencing or securing the Loan (the Note, the Mortgage and such other instruments being collectively referred to as the "Loan Documents") limiting or negating *Borrower's personal liability*, the Indemnitors hereby jointly and severally, unconditionally and absolutely (a) indemnify and ... (b) *guaranty to Lender* payment and performance of ... (hereinafter collectively referred to as the "*Guaranteed Obligations*"):
> ...
> (k) (i) the removal of any chemical, material or substance in excess of legal limits or which is required by any governmental entity, to which exposure is prohibited, limited, or regulated by any federal, state, county, or local authority, and which may or could pose a hazard to the health and safety of the occupants of the Property (which substances are also defined in the Mortgage as "Hazardous Materials"), regardless of the source of origination (including sources off the property which migrate onto the Property or its groundwater); (ii) the restoration of the Property to comply with all governmental regulations pertaining to Hazardous

11

> materials found in, on or under the Property, regardless of the source of origination (including sources off the Property which migrate onto the Property or its groundwater); and (iii) any indemnity or other agreement to hold Lender harmless from and against any and all losses, liabilities, damages, injuries, costs and expenses of any and every kind arising under Section 3 of the Mortgage and/or Indemnity Agreement (herein so called) of even date herewith executed by Borrower in favor of Lender...

(Docket No. 19-3 at 2 – 3) (emphasis added). The relevant portions of the "Environmental and Accessibility Indemnity Agreement" provide:

> WHEREAS, Lender has required, as a condition of making the Loan, that Indemnitor *indemnify* and *hold the Indemnified Parties harmless* against and from certain obligations set forth herein...

(Docket No. 19-4 at 1) (emphasis added). Defendants argue that they are not liable to Plaintiff as either guarantors or indemnitors under the above agreements, and that Plaintiff has failed to plead facts indicating otherwise. (Docket Nos. 21 at 9 – 11; 23 at 5 – 6). The Court agrees with Defendants, in part.

First, Plaintiff has not pled under which terms of the "Environmental and Accessibility Indemnity Agreement" Defendants' liability arises. (*See* Plaintiff's First Amended Complaint (Docket No. 19), generally). Even viewing the pleadings in the light most favorable to Plaintiff, the factual averments are insufficient to demonstrate that the "Environmental and Accessibility Indemnity Agreement" is anything other than an indemnity agreement. *See Coleman v. City of Bradford*, 204 A. 2d 260, 261 (Pa. 1964) (language "save, keep harmless and indemnify" established existence of an indemnity agreement); *Jalapenos, L.L.C.*, 939 A. 2d at 931 – 32 (agreement to "indemnify" and "hold harmless" constitutes an indemnity agreement). Unlike Plaintiff's averments as to Count I, Plaintiff has not pointed to any corresponding guaranty obligation by Defendants under the "Environmental and Accessibility Indemnity Agreement." Plaintiff has also failed to plead any factual predicate to recovery under an indemnity agreement

12

– in particular, actual damages sustained according to the terms of the "Environmental and Accessibility Indemnity Agreement." *MIIX Ins. Co. v. Epstein*, 937 A. 2d 469, 472 (Pa. Super Ct. 2007) (citing *Builders Supply Co. v. McCabe*, 77 A. 2d 368, 370 (Pa. 1951)).

Second, as indicated by Defendants, Plaintiff has failed to demonstrate that – pursuant to the terms of the "Principals' Indemnification Agreement" – the presence of asbestos in its current state on the mortgaged property actually violated a hazardous waste law or government regulation. Indeed, Plaintiff has not cited any such law or regulation in its First Amended Complaint. Moreover, the fact that Plaintiff provided the Court with a professional estimate of the potential cost of abatement of the existing asbestos is not sufficient – by itself – to allege that any such laws or regulations have been violated. As such, Defendants' Motion to Dismiss Count II is granted. However, because the Court believes that amendment to support Plaintiff's Count II claims is possible, such dismissal is without prejudice.

C. Count III: Fees and Costs

Lastly, Plaintiff claims in Count III of its First Amended Complaint that Defendants are liable as guarantors under Sections 1(j) and 14 of the "Principals' Indemnification Agreement." (Docket No. 19 at 15). These provisions provide that:

> 1. *Guarantees and Indemnities:* Notwithstanding *any provision in the Note, the Mortgage or any other instrument* evidencing or securing the Loan (the Note, the Mortgage and such other instruments being collectively referred to as the "Loan Documents") limiting or negating *Borrower's personal liability*, the Indemnitors hereby jointly and severally, unconditionally and absolutely (a) indemnify and ... (b) *guaranty to Lender* payment and performance of ... (hereinafter collectively referred to as the "*Guaranteed Obligations*"):
> ...
> (j) all court costs and Reasonable Attorney's Fees actually incurred by Lender for which Borrower is liable pursuant to the terms of any of the Loan Documents...
> ...
> 14. Payment of Lender's Expenses. If lender retains counsel for advice or other representation (a) in any litigation, contest, dispute, suit or proceedings

> (whether instituted by Lender, Indemnitors or any other party) in any way relating to this Agreement and the indemnities described herein; or (b) to enforce Indemnitors obligations hereunder, then all of the attorneys' fees arising from such services and all related expenses and court costs shall be an additional liability of Indemnitors to Lender, payable on demand.

(Docket No. 19-3 at 2 – 3, 9). Defendants counter that Plaintiff has failed to allege that any attorneys' fees or costs are owed, because it "relies upon the Indemnification Agreement as the basis for relief in the nature of a judgment against the Indemnitors in the amount of $112,335.63 for attorneys' fees and costs. However, nowhere in its Complaint does [Plaintiff] plead the amount of any attorneys' fees and costs it has paid..." (Docket No. 21 at 11). The Court disagrees with Defendants, as their argument is belied by their source of the amount of Plaintiff's alleged attorneys' fees and costs: the Prayer for Relief contained within Plaintiff's First Amended Complaint. (Docket No. 19 at 16). Plaintiff therein affirmatively pleads that prior to January 22, 2013, it accrued attorneys' fees and costs in state court proceedings related to foreclosure of the mortgaged property in the amount of $112,335.63. (*Id.*). This is a factual matter contained within the First Amended Complaint – a pleading. Plaintiff has made the requisite showing. Incidentally, Defendants attack the fees by arguing that these are somehow unjustified because Defendants did not oppose any of the actions filed against Borrower by Plaintiff in state court. Defendants provide no basis for this assertion. Accordingly, Defendants' Motion to Dismiss Count III is denied.

## VI. CONCLUSION

Based upon the foregoing, as to Counts I and III of its First Amended Complaint, Plaintiff has pled sufficient facts which demonstrate a presumptive right to recovery against Defendants under the "Principals' Indemnification Agreement." However, Plaintiff has not adequately pled enough of the facts necessary to sustain its claims under Count II of its First

Amended Complaint.  Accordingly, Defendants' Motion to Dismiss (Docket No. 20) Plaintiff's First Amended Complaint (Docket No. 19) is granted, in part, and denied, in part.  Plaintiff's claims under Count II will be dismissed, without prejudice.  Appropriate Orders follow.

                                                            *s/ Nora Barry Fischer*
                                                            Nora Barry Fischer
                                                            United States District Judge

Dated:  October 28, 2013
cc/ecf:  All counsel of record.