IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTMORELAND OPPORTUNITY FUND, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> RICHARD A. ZAPPALA, FRANK J. ZAPPALA, and RONALD A. ROSENFELD, <br><br> Defendants. | Civil Action No. 2:13-cv-456 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

**NORA BARRY FISCHER, District Judge.**

**I. Introduction**

At issue on cross-motions for summary judgment is the scope of Richard A. Zappala, Frank J. Zappala, and Ronald A. Rosenfeld's ("Defendants") personal liability resulting from their execution of a "Principals' Indemnification Agreement" in connection with a real estate transaction in May 2005 in Pittsburgh, Pennsylvania. Westmoreland Opportunity Fund, L.L.C., ("Plaintiff"), filed suit on March 27, 2013 asserting breach of contract claims against Defendants under the law of the Commonwealth of Pennsylvania and seeks greater than $75,000.00 in damages. (ECF No. 19). This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (diversity).

**II. Factual and Procedural Background[1]**

Plaintiff is a Pennsylvania corporation located in Monroeville, Pennsylvania. (ECF No. 19 at ¶ 1, ECF No. 39 at ¶ 1). Defendants Richard A. Zappala and Frank J. Zappala are residents of Florida, and Defendant Ronald A. Rosenfeld is a resident of Virginia. (ECF No. 19 at ¶¶ 2-4,

---

[1] The facts recited herein are derived from the pleadings and record taken as a whole and are essentially undisputed.

ECF No. 39 at ¶ 2). Defendants are or were the principals of a Pennsylvania limited partnership doing business as FRA Associates, L.P. ("Borrower"), with a registered address in Pittsburgh, Pennsylvania. (ECF No. 19 at ¶ 3, ECF No. 39 at ¶ 3).

In May 2005, Borrower purchased real property located in Penn Hills, Pennsylvania by executing an "Open-End Mortgage Note" (ECF No. 40 at pp. 46-61), "Open-End Mortgage and Security Agreement" (ECF No. 40 at pp. 62-109), "Principals' Indemnification Agreement" ("PIA") (ECF No. 40 at pp. 110-126), and "Environmental and Accessibility Indemnity Agreement" (ECF No. 19-4) (collectively, "Loan Documents"), with Nationwide Life Insurance Company ("Lender") in the original principal sum of $4,200,000.00. (ECF No. 19 at ¶ 10). Through a series of assignments, Plaintiff ultimately became the holder of the Loan Documents, and the rights and obligations contained therein, on December 11, 2012. (ECF No. 19 at ¶¶ 14-23).

Under the terms of the Loan Documents, Borrower was required to pay 119 consecutive monthly installments of $24,536.75, beginning on July 1, 2005 and ending on June 1, 2015. (ECF No. 19 at ¶ 25, ECF No. 39 at ¶ 17). Borrower failed to make payments beyond July 2011, and was in monetary default as a result. (ECF No. 19 at ¶ 26, ECF No. 39 at ¶ 19). Complaints were subsequently filed against Borrower in the Pennsylvania state court in January and February 2013, seeking Confession of Judgment and Foreclosure. (ECF No. 19 at ¶¶ 27-29, ECF No. 39 at ¶¶ 22-24). These Complaints resulted in a Judgment in Mortgage Foreclosure being entered on April 3, 2013, and a Writ of Execution in Mortgage Foreclosure against the property was issued on June 27, 2013. (ECF No. 27 at ¶ 28, ECF No. 39 at ¶¶ 25-26).

Thereafter, the subject property was sold to Plaintiff by the Allegheny County Sheriff at a public judicial sale conducted on October 7, 2013. (ECF No. 27 at ¶ 28). Plaintiff in turn sold

the property to an unrelated third party for $1,800,000.00 on December 2, 2013. (ECF No. 39 at ¶ 28, ECF No. 40 at p. 178, Wolper Aff. at ¶ 9). On January 24, 2014, Plaintiff filed a Petition to Fix Fair Market Value under 42 Pa.C.S. § 8103(a) in the state court action, requesting that the Court of Common Pleas set the fair market value of the property at $1,800,000.00. (ECF No. 40 at pp. 203-212).

While pursuing its remedies against the Borrower in state court, Plaintiff filed a Complaint (ECF No. 1) against Defendants in this Court on March 27, 2013, which was subsequently amended on August 5, 2013. (ECF No. 19). In Counts I through III of its First Amended Complaint, Plaintiff sought to hold Defendants personally liable for the Borrower's breach of certain covenants contained in the Loan Documents as a result of their execution of the PIA and the Environmental and Accessibility Indemnity Agreement. (ECF No. 19). Defendants subsequently filed a Motion to Dismiss, arguing that the language contained within all of the Loan Documents was incompatible with the finding of a guaranty, that the debt was non-recourse, and that the environmental indemnification liability had not been triggered by the facts pled by Plaintiff. (ECF No. 21 at pp. 4-12).

In a Memorandum Opinion dated October 28, 2013, this Court found that certain provisions of the PIA constituted the plausible creation of at least a partial guaranty relationship between Defendants and Plaintiff under Pennsylvania law (Count I). (ECF No. 24 at p. 6). However, the Court also found that Plaintiff had not adequately pled enough facts necessary to sustain its claims under the PIA and the Environmental and Accessibility Indemnity Agreement (Count II). *Id.* at pp. 11-13. Finally, the Court concluded that Plaintiff's First Amended Complaint was sufficiently pled with respect to its claim for attorneys' fees pursuant to the PIA

3

(Count III). *Id.* at pp. 13-14. Accordingly, Defendants' Motion to Dismiss was granted in part and denied in part, with Count II being dismissed without prejudice. *Id.* at p. 15.[2]

Thereafter, the Court entered a Case Management Order directing the parties to file cross-motions for summary judgment with respect to Count I of the First Amended Complaint (ECF No. 33), and cross-motions for summary judgment followed (ECF Nos. 37, 41). The Court held oral argument on April 11, 2014.[3] Having considered the Motions, supporting Briefs, the factual record before the Court and the parties' arguments, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 37) will be granted in part and denied in part, and Defendant's Motion for Summary Judgment (ECF No. 41) will be denied.

## III. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

[2] The Court allowed Plaintiff the opportunity to amend Count II no later than November 12, 2013; however, no Second Amended Complaint was filed. (ECF No. 25 at p. 1).

[3] Prior to oral argument, the Court granted Plaintiff's Motion to Strike the Unsworn Declarations of Bartoszewicz, Hardiman, Sitko, and Contrella (ECF No. 55) in support of the Defendants' alternative theory that the Loan Documents contained ambiguities. (ECF No. 70). The Court held that in the event it determined the disputed contracts were ambiguous, the Court would allow the parties to complete discovery prior to analyzing such evidence. *Id.* at pp. 1-2. The Court further granted in part the Defendants' Motion to Strike Plaintiff's Reply Brief (ECF No. 59), and denied without prejudice Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 66). The Court explained that it would not consider a newly raised legal theory argued by Plaintiff for the first time in its Reply Brief which was not included in the First Amended Complaint and upon which the Court permitted the expedited summary judgment order to be entered in the first instance. *Id.* at p. 2. The parties were advised by the Court that the scheduled oral argument was confined to the straightforward legal issues of contract interpretation which were discussed at the initial case management conference and they were to demonstrate to the Court that the contractual agreements were unambiguous and there were no genuine issues of material fact. *Id.* Finally, the parties were advised that to the extent they believed it was necessary to move beyond the scope of the Case Management Order in order to effectively represent their respective clients, they were to inform the Court immediately and the Court would deny the current pending motions for summary judgment without prejudice and allow the parties to refile after they completed fact and expert discovery. *Id.* No notification was received by the Court and oral argument proceeded as previously scheduled.

*Catrett*, 477 U.S. 317, 322, 106 S.C.t 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perski*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

## IV. Discussion

Defendants do not dispute the allegations concerning Borrower's breach of its contractual duties to make payments on the loan, and have admitted that Borrower monetarily defaulted and did not contest the foreclosure proceedings against the property. (ECF No. 21 at pp. 11-12). In addition to its monetary default, however, Plaintiff contends that Borrower also committed incurable default as a result of its breach of Section 22 of the Mortgage, specifically, Section 22(b)(vii), the one percent covenant, and Section 22(b)(xix), the inadequate capital covenant.

(ECF No. 19 at ¶ 50). Section 22(b)(vii) of the Mortgage provides that Borrower's "outstanding principal balance of [non-Loan] debt shall not exceed at any one time 1% of the outstanding Loan[.]" (ECF No. 40 at p. 83). Section 22(b)(xix) requires the Borrower "to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations (except for principal and interest due under the Note which shall be paid from the cash flow generated by the Property)." *Id.* at p. 84. Plaintiff argues that, as a result of the Borrower's incurable default of these covenants, Defendants became liable for payment of the full value of the Note in accordance with the PIA. (ECF No. 19 at ¶¶ 35-55).

As an initial matter, the Court revisits its previous ruling with respect to Defendants' Motion to Dismiss, wherein the Court specifically rejected Defendants' argument that their alleged liability under Section 22 of the Mortgage was only as indemnitors, and not guarantors. (ECF No. 24 at pp. 8-9). In this regard, the Court held:

> … Presently, the plain language of the "Principals' Indemnification Agreement" provides that upon violation of Section 22 of the Mortgage by Borrower, Defendants – having signed an independent agreement with the Lender – automatically become fully liable for payment of the Note. *See Hastings*, 106 A. at 310 (the guarantee to pay a note is a guaranty). In this Court's opinion, this language is sufficient to constitute at least a guaranty, with the only condition being that a third party (Borrower) violate a condition of a separate agreement (i.e., the Mortgage) in order to create potential liability.

(ECF No. 24 at p. 9). At that time, the Court concluded that Plaintiff had pled sufficient facts stating a plausible claim that Defendants were guarantors of the Note with respect to the alleged breach of Section 22 of the Mortgage by Borrower (Count I). *Id.* at p. 10.

Defendants acknowledge that the "plain language" in the PIA "can be read to make the Defendants guarantors of the Note[,]" but argue that "other plain language in the PIA can just as well be read to provide that does not occur" where the Defendants' liability is predicated upon a

6

violation of Section 22(b) of the Mortgage. (ECF No. 50 at p. 2). Section 1 of the PIA speaks to the Defendants' liability, and provides, in relevant part:

> 1. <u>Guarantees and Indemnities</u>. Notwithstanding any provision in the Note, the Mortgage or any other instrument evidencing or securing the Loan (the Note, the Mortgage and such other instruments being collectively referred to as the "Loan Documents") limiting or negating Borrower's personal liability, the Indemnitors hereby jointly and severally, unconditionally and absolutely (a) indemnify and … (b) guaranty to Lender payment and performance of each of the same (hereinafter collectively referred to as the "Guaranteed Obligations"):
> …
> (m) the failure to comply or breach or default under the single purpose entity provisions as set forth in Section 22(b) of the Mortgage.
>
> Notwithstanding anything herein to the contrary, in the event that Lender seeks remedies or enforces its rights hereunder or under any other Loan Document for any sums due under subsections (a) through (m) above, such action shall not cause the Loan to become fully recourse, but merely shall make Borrower and the Indemnitors liable for amounts due, costs, losses, damages, losses in value or claims as provided in such subsections (a) through (m) above. The obligations in subsections (a) through (m), except as specifically provided in subsections (k) and (l), shall survive the repayment and satisfaction of the Note. Lender's rights under this Agreement are in addition to all rights of Lender under the Mortgage and the Loan Documents, and payments by the Indemnitors under this Agreement shall not reduce the obligations and liabilities of Borrower under the Note, the Mortgage or the other Loan Documents; provided, however, this shall not be construed to permit Lender to collect from Borrower for the same obligations or liabilities for which Lender has already received payment from the Indemnitors.
>
> Notwithstanding anything to the contrary contained herein, in the Note or in the other Loan Documents, the Indemnitors shall be personally, fully and completely liable for the payment of the Note (including all principal, interest and other charges) and performance under the Loan Documents in the event (a) Borrower violates the covenant governing the placing of subordinate financing on the Property as set forth in the Mortgage; (b) Borrower violates the covenant restricting transfers of interests in the Property or transfers of general partnership interests in Borrower as set forth in the Mortgage; or (c) Borrower or its general partner violate the provisions of Section 22 of the Mortgage or there is filed against Borrower or the Indemnitors a petition in bankruptcy or for the appointment of a receiver, or there commences under any bankruptcy or insolvency law, proceedings for Borrower's or Indemnitors' relief, or for the compromise, extension, arrangement or adjustment of Borrower's or Indemnitors' obligations is [sic] not dismissed within ninety (90) days after the filing of same.

7

(ECF No. 40 at pp. 110, 113).

The dispute centers on the parties' competing interpretations of paragraphs two and three. Defendants argue that the second paragraph is the operative remedy for the Section 22(b) violations alleged here; therefore, Plaintiff's exclusive remedy is indemnification for losses, and not guaranty liability for the Note. In other words, Defendants argue paragraph two trumps paragraph three. Plaintiff, on the other hand, contends that paragraphs two and three provide for cumulative and complimentary remedies for alleged violations of Section 22(b) of the Mortgage. Both parties rely on basic principles of contract construction in support of their respective positions. Accordingly, the Court begins our analysis with a discussion of these guiding legal principles.

Under Pennsylvania law, guaranty contracts are subject to the same rules of interpretation as other contracts. *Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D.Pa. 2009); *Paul Revere Protective Life Ins. Co. v. Weis*, 535 F. Supp. 379, 386 (E.D.Pa. 1981), *aff'd without opinion*, 707 F.2d 1403 (3d Cir. 1982).[4] Pennsylvania rules of contract interpretation require this Court to "ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne University*, 777 A.2d 418, 429 (Pa. 2001). Such intent is to be determined from reading the entire agreement as a whole and "[c]ourts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Murphy*, 777 A.2d at 429 (citations omitted). One part of a contract cannot be interpreted so as to annul another part, and a contract must be construed, if possible, to give effect to all of its terms. *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001); *Cerceo v. DeMarco*, 137 A.2d 296, 298 (Pa. 1958); *Flatley v.*

---

[4] The parties have agreed that the PIA shall be interpreted under the laws of the Commonwealth of Pennsylvania. *See* (ECF No. 40 at p. 119 § 21).

8

*Penman*, 632 A.2d 1342, 1344 (Pa. Super. 1993), *appeal denied*, 641 A.2d 586 (Pa. 1994); *Second Federal Sav. and Loan Ass'n. v. Brennan*, 598 A.2d 997, 1000 (Pa. Super. 1991). Clauses that seem in conflict must be construed, where possible, as consistent with one another. *Flatley*, 632 A.2d at 1344 ("Clauses in a contract should not be read as independent agreements thrown together without any consideration of their combined effect.").

"When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy*, 777 A.2d at 429 (internal quotation omitted). If the terms of a contract are unambiguous, the plain meaning of the terms of the agreement will be enforced. *Id.* To this end, Pennsylvania courts generally enforce the unambiguous terms of agreements between sophisticated parties that are freely negotiated at arm's length in order to allow the parties to such agreements the benefits of their bargains. *See McMullen v. Kutz*, 985 A.2d 769, 778 (Pa. 2009) ("freely negotiated agreements entered into at arm's length are generally enforced according to their terms to allow parties the benefit of their bargains."); *see also John B. Conomos, Inc. v. Sun, Inc.*, 831 A.2d 696, 708 (Pa. Super. Ct. 2003) ("courts should not [generally] set aside terms on which sophisticated parties agreed.").

If the terms of a contract are ambiguous, extrinsic and parole evidence is admissible to interpret the ambiguous portions of the contract. *Murphy*, 777 A.2d at 429. However, a contract is not ambiguous merely because the parties disagree on its construction. *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (citing *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17, 21-22 (Pa. Super. 1995); *see also County of Mercer v. Unilect Corp.*, 612 F. Supp. 2d 638, 649 (W.D.Pa. 2009) ("Different interpretations by the parties does not necessarily render the contract ambiguous."), *aff'd*, 381 F. App'x 156 (3d Cir. 2010). "A contract contains an ambiguity if it is reasonably susceptible of different

constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Murphy*, 777 A.2d at 429. "The 'reasonably' qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable." *Trizechahn Gateway, LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (citing *Murphy*, 777 A.2d at 430).

Having fully considered the parties' arguments and applying the standards discussed above, the Court finds that the language of the PIA is not ambiguous and the two paragraphs are not inconsistent. The only reasonable interpretation of the PIA is that the parties did not, as Defendants contend, intend to limit Defendants' liability for alleged Section 22(b) violations as non-recourse only. First, we observe that the PIA does not contain any language which expressly limits the Defendants to indemnification liability for an alleged violation of Section 22(b) of the Mortgage. Paragraph two simply states that "*in the event*" the Lender seeks remedies or enforces its rights for "*sums due*," the Loan shall not become fully recourse and the Defendants' obligation is to indemnify the Plaintiff. (ECF No. 40 at p. 113) (emphasis added). Moreover, paragraph two specifically provides that the Lender's rights under the agreement "are *in addition to* all rights of Lender under the Mortgage and the Loan Documents." *Id.* at p. 113 (emphasis added). Paragraph three provides that Defendants are "fully and completely liable" if the Borrower violates the provisions of Section 22 of the Mortgage. *Id.* There is no language suggesting that the two remedies are mutually exclusive, and interpreting them as cumulative gives effect to both paragraphs. *Capek*, 767 A.2d at 1050.

Furthermore, as Plaintiff points out, the two violations alleged in this case, namely the one percent covenant and the inadequate capital covenant, are not expense covenants for which

"sums" or expenses are due *per se*, but rather, are financial covenants. If the Court were to adopt the Defendants' reading of the PIA, it would foreclose the possibility of full recourse liability for any Section 22(b) violation of the Mortgage, and would require the Court to construe paragraph three as providing for full recourse liability only for a Section 22(a) violation. This is not, however, what the PIA states, and "[t]he law will not imply a different contract than that which the parties have expressly adopted." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986). The PIA was developed after negotiations among sophisticated business entities and individuals represented by experienced, knowledgeable counsel. As such, these sophisticated entities and individuals can be assumed to have chosen their contract language carefully, *Murphy*, 777 A.2d at 429, and they were free to contract as they deemed appropriate. In this vain, Defendants were free to structure their potential liability in any way they chose, and if they had wanted to limit their liability as they now suggest, they could have expressly done so.

The Court's conclusion is further bolstered when paragraphs two and three are considered in relation to other provisions in the PIA. The first page of the PIA states that the Lender was unwilling to make the Loan to the Borrower unless the Defendants agreed to provide a guaranty, and Defendants agreed to provide the guaranty in order to induce the Lender to make the Loan. (ECF No. 40 at p. 110). Section 2 of the PIA states that the guaranty is absolute and unconditional, and is a guaranty of payment, not collection. (ECF No. 40 at p. 113). In addition, Section 22 provides:

> 22. <u>Personal Liability</u>. Indemnitors hereby acknowledge and agree that notwithstanding any other provision of this Agreement, the Note, the Mortgage or any of the other Loan Documents to the contrary, the obligations of Indemnitors under this Agreement shall, except as otherwise expressly set forth in this Agreement, be unlimited and unconditional personal obligations, and that Lender would not enter into the Loan but for the personal liability undertaken by Indemnitors under this Agreement.

11

(ECF No. 40 at p. 120). It is apparent that the parties' intent was to provide full recourse liability for payment of the Note.

In support of their interpretation that the second paragraph is the Plaintiff's exclusive remedy for alleged Section 22(b) violations, Defendants rely primarily on the rule of contract construction set forth in *A. G. Cullen Construction, Inc. v. State System of Higher Ed.*, 898 A.2d 1145 (Pa. Commw. Ct. 2006), namely, that "where specific or exact terms seem to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language." *Id.* (quoting *PBS Coal, Inc. v. Hardhat Mining, Inc.*, 632 A.2d 903, 906 (Pa. Super. 1993)). The Court has concluded, however, that paragraphs two and three are not in conflict, and accordingly, there is no need to resort to this particular rule of construction. *See Musko v. Musko*, 697 A.2d 255, 256 (Pa. 1997) (holding that rule has no application when "[t]here is no apparent conflict between specific and general terms which would justify its use.").

This rule of construction is inapplicable for the additional reason that the PIA does not stand alone; rather, it is one component of a multi-document transaction. Where multiple documents memorialize a single transaction, those documents are read together to ascertain the parties' true intent. *Dollar Bank v. Swartz*, 657 A.2d 1242, 1244 (Pa. 1995) (mortgage, guaranty, and suretyship agreement interpreted together); *Housing Mortgage Corp. v. Allied Construction, Inc.*, 97 A.2d 802, 805 (Pa. 1953) (purchase money mortgage, deed, advance-money mortgages, and construction loan agreements interpreted together); *Howard Industries, Inc. v. Allegheny Ludlum Corp.*, 2010 WL 2933959 at *5 n.3 (W.D.Pa. 2010) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the

ascertainment of the true intent of the parties."). This is true even if the documents were not executed by the same parties. *Housing Mortgage*, 97 A.2d at 805 (interpreting documents together, "even though not made by the same parties, they were part and parcel of the same transaction."); *Conshohocken Fed. Savings and Loan Assoc. v. Period and Country Homes, Inc.*, 430 A.2d 1173. 1179 (Pa. Super. 1981) ("The three agreements entered into … all dealt with the same subject matter and should be interpreted together even though they were not made by the same parties.").

With these principles in mind, the Court notes that the language of the Note and Mortgage include parallel provisions that inform on the scope of liability. For example, the Note initially provides for non-recourse liability of the Borrower for the payment of principal and interest, but then provides that:

> … Notwithstanding the foregoing, nothing herein contained shall be deemed to be a release or impairment of the Loan evidenced by this Note or the security therefor intended by the other Loan Documents, or be deemed to preclude Lender from exercising its rights to foreclose the Mortgage or to enforce any of its other rights or remedies under the Loan Documents, including but not limited to that certain Principals' Indemnification Agreement of even date herewith from Richard A. Zappala, Frank J. Zappala, Jr., and Ronald A. Rosenfeld (collectively referred to herein as the "Principals") to Lender[.]
>
> Notwithstanding the foregoing, it is expressly understood and agreed that the aforesaid limitation on liability shall in no way effect or apply to the continued personal liability of Borrower or the Principals for all sums due to:
> …
> (m)  the failure to comply or breach or default under the single purpose entity provisions as set forth in Section 22(b) of the Mortgage.
>
> Notwithstanding anything herein to the contrary, in the event that Lender seeks remedies or enforces its rights hereunder or under any other Loan Document for any sums due under subsections (a) through (m) above, such action shall not cause the Loan to become fully recourse, but merely shall make Borrower and the Principals liable for amounts due, costs, losses, damages, losses in value or claims as provided in such subsections (a) through (m) above. The obligations of Borrower in subsections (a) through (m) above, except as

specifically provided in subsections (k) and (l), shall survive the repayment of the Loan evidenced by this Note, and satisfaction of the Mortgage.

      10. <u>Full Recourse</u>. Notwithstanding any provisions in this Note to the contrary, including without limitation the provisions set forth in the section captioned "Exculpation" hereinabove, Borrower shall be personally liable, jointly and severally whether one or more, for the entire indebtedness evidenced by this Note (including all principal, interest and other charges) in the event (a) Borrower violates the covenant governing the placing of subordinate financing on the Property as set forth in the Mortgage; (b) Borrower violates the covenant restricting transfers of interest in the Property or transfers of general partnership interests in Borrower as set forth in the Mortgage; or (c) Borrower or its general partner violate the provisions of Section 22 of the Mortgage or there is filed against Borrower or any guarantor or indemnitor of the Loan, a petition in bankruptcy or for the appointment of a receiver, or there commences under any bankruptcy or insolvency law, proceedings for Borrower's relief, or for the compromise, extension, arrangement or adjustment of Borrower's obligations which is not dismissed within ninety (90) days after the filing of same.

(ECF No. 40 at p. 54-55 § 9, p. 57-58 § 10). Substantially similar provisions are also included in the Mortgage. (ECF No. 40 at pp. 100-103, §§ 47 and 48).

In addition to these parallel provisions, the Mortgage specifically incorporates the PIA in the Cross-Default provision, and further provides that the rights of the Lender are cumulative:

      36. <u>Cross-Default</u>. The Note is also secured by the terms, conditions and provisions of the Assignment and, additionally, may be secured by contracts or agreements of guaranty or other security instruments. The terms, covenants, conditions and agreements of each security instrument shall be considered a part hereof as if set forth herein verbatim. Any Event of Default under this Mortgage or any of the other Loan Documents shall constitute an Event of Default hereunder and under each of the other Loan Documents. Notwithstanding the foregoing, the enforcement or attempted enforcement of this Mortgage or any of the other Loan Documents now or hereafter held by Lender shall not prejudice or in any manner affect the right of Lender to enforce any other Loan Document; it being understood and agreed that Lender shall be entitled to enforce this Mortgage and any of the other Loan Documents now or hereinafter held by it in such order and manner as Lender, in its sole discretion, shall determine.
…

      45. <u>Rights of Lender Cumulative</u>. The rights of Lender arising under the terms, covenants, conditions and agreements contained in this Mortgage shall be separate, distinct and cumulative, and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any

> one provision herein to the exclusion of any other provisions, anything herein or otherwise to the contrary notwithstanding.

(ECF No. 40 at p. 95-95 § 36, p. 100 § 45).

Based upon the parties' intent, as expressed in the Note and Mortgage, coupled with the language of the Mortgage incorporating the terms of the Note and the PIA, Plaintiff is not limited to the indemnification remedy set forth in paragraph two of the PIA, but may, at its sole discretion, seek full recourse liability pursuant to paragraph three. The Court will not read the PIA in a manner that creates a conflict between the intent expressed in the Mortgage and the Note. It thus rejects Defendants' contention that a different intent is evidenced in each agreement because there are different parties to each one. As previously stated, the Court construes multiple documents together in order to determine the parties' true intent, *see Dollar Bank*, 657 A.2d at 1244, even when the documents are not executed by the same parties. *Housing Mortgage*, 97 A.2d at 805.

In sum, the Court concludes that the PIA unambiguously renders Defendants subject to full recourse liability for alleged violations of Section 22(b)(vii) and (xix) of the Mortgage. That having been said, the Court expresses no view as to whether the Defendants' liability has, in fact, been triggered. The only issue decided by the Court today with respect to the instant cross-motions for summary judgment is the threshold issue of whether the language of the PIA provides for full personal liability of the Defendants for the alleged violations of these covenants. The Court leaves for another day, on a more fully developed record following discovery, the issue of whether Borrower violated the one percent covenant of Section 22(b)(vii), and/or the inadequate capital covenant of Section 22(b)(xix), thereby triggering the Defendants' personal liability. We also leave for another day the issue of whether the Lender waived the alleged default.

## V. Conclusion

Based upon the above, Plaintiff's Motion for Summary Judgment (ECF No. 37) will be granted in part and denied in part. Specifically, Plaintiff's Motion will be granted with respect to the scope of the Defendants' liability for alleged Section 22(b) violations of the Mortgage. The Motion will be denied, without prejudice, with respect to whether Defendants' liability has, in fact, been triggered. Additionally, Defendants' Motion for Summary Judgment (ECF No. 41) will be denied. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: July 11, 2014

cc/ecf: All counsel of record.